2011 UT App 244

STATE of Utah, in the interest of E.L.F., a person under eighteen years of age.

M.E.W., Appellant,

v.

State of Utah, Appellee.

No. 20110341–CA.

Court of Appeals of Utah.

July 29, 2011.

Joseph Lee Nemelka, Salt Lake City, for Appellant.

Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before Judges DAVIS, McHUGH, and CHRISTIANSEN.

## DECISION

PER CURIAM:

¶ 1 M.E.W. (Mother) appeals a permanency order placing E.L.F. in the permanent physical custody of her biological father D.F. (Father) and granting joint legal custody to Mother and Father.

¶ 2 We first consider whether the permanency order is final and appealable. The Guardian Ad Litem (GAL) argues that

"even though the court labeled the grant of physical custody as permanent, it could not be permanent so long as the court maintained personal jurisdiction over Father." The GAL argues that there can be no jurisdiction over an appeal absent an order that terminates juvenile court jurisdiction. The State concurs in the GAL's argument.

¶ 3 "In child welfare proceedings, unlike traditional civil cases, appeals may be heard from more than one final judgment" *In re A.C.M.*, 2009 UT 30, ¶ 10, 221 P.3d 185 (internal quotations and citations omitted). "This difference does not stem from a different application of or exception to the final judgment rule, but rather from the unique nature of juvenile court jurisdiction, which often continues after a final judgment is rendered." *See id.* "When the effect of an order is to immediately implement a change in the permanent status of the child, and requires no further judicial action to be final, the action before the lower court has concluded and the order may be appealed." *Id.* ¶ 11 (alterations, citations and internal quotation marks omitted). The GAL argues that the permanency order granting permanent physical custody of E.L.F. to Father and joint legal custody to both parents is not final and appealable because the juvenile court retained jurisdiction over the adoption of a parenting plan.

¶ 4 A starting point for the analysis of whether a permanency order is final and appealable is *In re A.F.*, 2006 UT App 200, 138 P.3d 65, where we stated that "the determination of whether a permanency order is final and appealable requires pragmatic analysis of the order itself." *Id.* ¶ 9. Thus, "whether an order is final and appealable turns on the 'substance and effect' of the order." *Id.* Among the permanency orders that "end the case as a practical matter and, thus, are clearly final and appealable" are "orders converting temporary custody in the State or some other individual into permanent custody." *Id.* ¶ 10. Similarly, in *Office of the Guardian ad Litem v. H.M.*, 2007 UT 21, 154 P.3d 835, the GAL itself appealed a permanency order that returned custody and guardianship of all but two of the involved children to their mother, but continued family preservation services. *See id.* ¶ 1. The GAL argued that the permanency order was final and appealable. *See id.* ¶ 16. Noting that "the juvenile court frequently retains jurisdiction over cases after some of the issues have been finally resolved," the Utah Supreme Court held that the order was final because an order "entered upon disposition of an adjudicated petition of abuse, neglect or dependency is a final order on the merits of the petition because it ends the current juvenile proceeding begun by the petition, and is a final factual determination of the underlying petition." *Id.* ¶ 18 (citations and internal quotation marks omitted). Finality was not defeated by the fact that the juvenile court retained jurisdiction "to exercise its discretion to order protective services and to make additional orders in the best interests of the minor when DCFS's custody of a minor has been terminated." *Id.* ¶ 20. In this case, the permanency order is also a "final factual determination" of the underlying petition alleging abuse, neglect, or dependency, *see id.* ¶ 18. It granted permanent physical custody to Father, with joint legal custody in Mother and Father. The juvenile court retained jurisdiction to oversee adoption of a parenting plan.

¶ 5 The juvenile court's retention of jurisdiction over a child does not necessarily defeat finality. *In re K.F.*, 2009 UT 4, 201 P.3d 985, was an appeal from an order changing a child's permanency goal from reunification to individualized permanency. After terminating reunification efforts, the juvenile court ordered the Division of Child and Family Services (DCFS) to continue engaging the mother in family therapy and reimburse her for her travel expenses because K.F. desired to have a relationship with her mother and K.F.'s mental health required that relationship. *See id.* ¶ 16. The Utah Supreme Court rejected the GAL's claim that the order of individualized permanency was not final and appealable. *See id.* ¶ 25. The court stated,

> [O]ur inquiry into whether an order leaves a question open for further judicial action is often unconcerned with the question of whether the juvenile court's jurisdiction over a minor continues beyond its entry of

the order. Because considerations regarding a child's welfare are rarely, if ever, static and because the child's environment is constantly evolving, the juvenile court frequently retains jurisdiction over cases after some of the issues have been finally resolved. Therefore, the determining factor in deciding if an order is final and appealable is whether it effects a change in the permanent status of the child. A permanent change in the child's status vis-a-vis the child's parent is sufficient.

*Id.* ¶ 36 (citations and internal quotation marks omitted). The supreme court stated that the individualized permanency order transferring custody from K.F.'s mother was final and appealable as "the only order from which she will be able to appeal the juvenile court's decision to terminate reunification efforts and keep K.F. in state custody." *Id.* ¶ 39. The supreme court stated that "it is possible that the mother will not have another opportunity to appeal the court's order if we do not allow her to do so now," concluding that "this order must be considered final for matters of appealability; otherwise, the mother may never have an opportunity· to appeal this order." *Id.* ¶ 42. The permanency order in this case did not leave the question of E.L.F.'s custody open for further judicial action, although the court retained jurisdiction pending adoption of a parenting plan. Mother's appeal in this case involves a situation where she will not have another opportunity to appeal the order granting Father permanent physical custody. We conclude that the permanency order being appealed by Mother is final and appealable.

■ ¶ 6 Neither the State nor the GAL has responded to the merits of Mother's appeal. Mother first claims that the juvenile court abused its discretion by terminating reunification services. "If the court determines that reunification services are appropriate, it shall order that the division make reasonable efforts to provide services to the minor and the minor's parent for the purpose of facilitating reunification of the family, for a specified period of time." Utah Code Ann. § 78A–6–312(2)(d)(i)(A) (Supp.2010). The juvenile court found that Mother completed all services required with the exception of the family therapy, which was terminated as un-

successful. However, the court found that Mother was unable to internalize the skills she had learned through participation in the offered services. Mother challenges the sufficiency of the evidence to support the juvenile court's finding that DCFS made reasonable efforts to provide reunification services and, more specifically, challenges the findings regarding family therapy. However, Mother simply restates her version of the facts and discounts the testimony of other witnesses, including the family therapist. "[W]e defer to the juvenile court because of its advantaged position with respect to the parties and the witnesses in assessing credibility and personalities." *In re S.L.*, 1999 UT App 390, ¶ 20, 995 P.2d 17; *see also In re L.M.*, 2001 UT App 314, ¶¶ 10–12, 37 P.3d 1188 (stating that the juvenile court is in the best position to weigh conflicting testimony, assess witness credibility, and make findings from such determinations). The evidence amply supports the juvenile court's findings. Because "a foundation for the court's decision exists in the· evidence," we ·do not "engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. Mother next claims that the juvenile court failed to consider or give proper weight to other factors. However, as in her first argument, Mother simply challenges the interpretation and emphasis of the juvenile court. We will overturn the juvenile court's decision "only if it either failed to consider all the facts or considered all the facts and its decision was nonetheless against the clear weight of the evidence." *Id.*

■ ¶ 7 Mother's final argument is that the juvenile court was required to consider and apply statutory factors in its decision to modify the custody previously ordered by the district court in the paternity action pertaining to E.L.F. Utah Code section 78A–6–104(4)(a) allows the juvenile court to acquire jurisdiction to modify a district court's custody award "if the child is dependent, abused, neglected, or otherwise comes within the jurisdiction of the juvenile court under Section 78A–6–103." Utah Code Ann. § 78A–6–104(4)(a) (2008). "The juvenile court may, by order, change the custody, subject to Subsec-

tion 30–3–10(4),[1] support, parent-time, and visitation rights previously ordered in the district court as necessary to implement the order of the juvenile court for the safety and welfare of the child." *Id.* § 78A–6–104(4)(b). Mother claims that the juvenile court did not adequately consider "a substantial number of factors," including "the involvement of the father and his ability to act in the best interest of the child by allowing frequent and meaningful contact with the mother." Contrary to Mother's claim, the court found that Father believed it was "important for [the child] to have a relationship with [Mother]." Mother also contends that the juvenile court ignored "evidence that the father was not involved in the life of the child," but does not state what that claimed evidence was. The court found that E.L.F. had been living with Father since December 2009 and that she was integrated into the family. There was testimony about the participation of both Father and E.L.F.'s stepmother in E.L.F.'s school and extracurricular activities, which Mother attempted at trial to construe as evidence that Father had delegated E.L.F.'s care to stepmother and did not have sufficient personal contact with E.L.F. The juvenile court did not find this claim to be credible. Because there is a basis in the evidence to support the decision of the juvenile court, we affirm the permanency order.

---

1. While section 30–3–10(4) refers to consideration of a parent's disability in awarding custody, Mother assumes, as do we, that this statutory reference is intended to refer to section 30–3–10.4, which states the factors to be considered in modifying or terminating an order of joint legal or physical custody. Mother argues that the juvenile court was required by section 30–3–10.4 to "consider the factors outlined in section 30–3–10 and Subsection 30–3–10.2(2)."